The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We have four cases before the court this morning, three of which are being argued and one of which the parties have waived argument for. All four cases involve the same two parties and are all appeals from the Patent Trial and Appeal Board. The first case before the court is 20-1480, Intuitive Surgical, Inc. v. Ethicon LLC. Mr. Katz, I understand you want to reserve three minutes for rebuttal? That's correct, Your Honor. Thank you. Okay, when you are ready, you may proceed. Thank you, Your Honors. May it please the court, my name is Stephen Katz, arguing on behalf of Appellant Intuitive Surgical. I'm going to be starting by discussing the Giordano-Wallace combination and the error of the board, and then I'll move on to Prisco, but of course I'll address any questions the panel may have on anything. On the Giordano-Wallace combination, the error of the board is that it ruled on a straw man combination. That was not the combination proposed by the petitioner. It read in an unclaimed element that the petitioner didn't state existed, and that we say is error. Because in fact, the petition created a premonitation case of obviousness. We demonstrated where each element of the claim was found in the prior art, and we provided a motivation to combine Giordano with the robotic Wallace. And in fact, the board held that claims one through ten were obvious based on the Giordano-Wallace combination. And then in our reply brief for the board, we clarified the position. Once the patent owner raised this issue saying, well, you didn't state where the articulation control knob is, we clarified it in the reply brief. And so we believe it was... I think that's the real hitch, the difference between what constitutes a clarification and what constitutes a change of theory. The board concluded that it was a change of theory, and that's obviously what your friend on the other side argues. Tell us exactly where in the petition you made that argument. Sure, Your Honor. And first of all, let me just clarify that I don't believe the board said we made a change in theory. Our reading of the board's decision is that we just weren't clear enough. In fact, we believe that that's exactly where a clarification is allowed. But where the argument is, is that we first laid out the Giordano-Shelton-Wallace combination, which did not have an articulation. Then we added in the claims of articulation, and we pointed out at Appendix 3964, Your Honor, that we were now adding the articulation control to the combination. And what we said at 3964 is that the articulation control would be added to the Shelton stapler first. And then at 3965, we said that new handheld stapler would be combined with Wallace in the same manner as the Shelton stapler was combined with Wallace. So we basically said, we already showed you why Shelton staplers combined with Wallace, and why that's a good thing for robotic use. Now all we're doing is adding the articulation joint to the mix. And in fact, at 3964, we specifically quote that the articulation control can be on the handle, and we also provide a figure which shows the articulation control on the shaft. And so when we say, go back to Ground 1 to see how the combination with Wallace is made, there we say, rip off the handle and put on a tool mounting portion so you can mount it onto the robot. And the robot will have these disks that get connected into the tool mounting portion to provide control. And the result is a robotically controlled instrument. Now what the board said is, well, you didn't use those words. You didn't provide the detail you provided for other elements. And the answer there, Your Honor, is we didn't have to provide the same level of detail because we provided detail for claim elements. The articulation control is not a limitation of the claim. So we provided detail of how the articulation joint was connected. But what we didn't do was go into excruciating detail of how the articulation control would be connected. Is 3964 part of your petition? I mean, I asked you to show me in your petition where it's clear that you made these arguments, and you pointed me to 3964. But maybe I'm missing something. Okay, so in the petition, my apologies. Yeah, 3964 is the petition, Your Honor. Okay. Yes. Okay. Absolutely, I'm sorry. You threw me off there a bit. Yes, the 3964 is absolutely the petition. And it's where we discuss when we added the articulation joint. And then we refer back to prior discussions in the petition where we showed how the hand-held instrument is combined with the robot. So you don't believe it was fair for the board to say that we were talking about a totally different combination? We definitely were not talking about a different combination. And again, we read the board as saying we just weren't clear enough. Not that we were changing theories. We were basically silent on the point the board was interested in. What the board said was, because you didn't say the words, move the articulation control, we are going to assume you must have meant to leave it alone. We certainly, the board did not say, nor did we say, the articulation control would remain manual when you convert to a robot. No one would propose that. That doesn't make any sense. And no one suggests there's a benefit to that. And so what the board did was say, well, unfortunately you didn't say to move the articulation controls. We're going to assume it remains on the robot. That is not a position we ever stated. So we couldn't have changed our theory. We simply didn't explain in words that the articulation control moved. We thought it was self-evident from the petition that when you combine the handheld instrument with the robot, you move the controls over to the robot, as we described for the non-articulated embodiment. And so that's, with my limited time, unless there's other questions on Wallace, I'd like to move over to the PRISCO. That's fine. Okay, thank you. So with the PRISCO decision, the board made a different error. Here, what the board did was immediately jump to the once envisaged test of Blue Calypso and Kenamental before even determining whether there was a disclosure. And this tainted the entire analysis, because essentially what the board did was say, I believe, patent owner, that a wrist is incompatible with a push-pull drive rod. And because it's incompatible, I don't think a POSITA would see that in the reference. Mr. Cash, this is Judge Clevenger. May I interrupt, please? I think your adversaries think you have a problem in having any right to argue the merits of the patentability decision on the 1481 appeal. The argument that your adversaries have made is that you're not a party to the final judgment, and that you have no appeal rights to complain about the patentability decision in the 1481. Why do you have the right to make the argument on the merits? Yes, Your Honor. If you're not a party to the final judgment. I've got two, possibly three answers to that, Your Honor. The first is, I will explain that estoppel does not apply. And second, I'll explain that even if estoppel does apply, we absolutely have appeal rights now that a final written decision is entered. So, they can't cross either hurdle. So, let me first address the estoppel point. What we say is that estoppel does not apply because we could not have raised, or we did not raise in the other petitions, or reasonably could have raised these grounds in the other two petitions that were simultaneously filed. The reason why we couldn't reasonably have raised it is because, in fact, the Claim 24 grounds that we provide takes more than 14,000 words. So, we could not attack Claim 24 adequately with our three different grounds, Prisco, Giordano, and Tim Anderson, without filing multiple simultaneous petitions. Mr. Pratt. Yes, Your Honor. This is Chris Stolz. He responds to the argument that you could have split your IPRs up in a different way, addressing different claims and different IVRs. You know, just all the grounds for one set of claims and one IPR, and all the grounds in another set of claims, and a different IPR. And that that would be the tool that you would have to use to deal with the board's 14,000-word limit. I mean, you know, and another option would be to try to be more succinct, to be honest. I mean, that would be another way to do it. But how do you respond to that argument, that there was a way that you could have avoided this problem by setting up your IPRs a little bit differently? And, Your Honor, the answer to that is, in fact, that is not a viable option because, again, Claim 20, assuming we have a right to bring the grounds we want to against Claim 24, and that if they didn't institute any of those grounds, there would be no estoppel, we'd just take them elsewhere. It took more than 14,000 words just for Claim 24. If you add up the words, and this is something we point out in our reply brief, if you add up the words that we spend on Claim 24, including where we refer back to prior analyses, it is more than 14,000 words. So what I'm saying, Your Honor, is we could not have even filed a single petition on just Claim 24. It would have taken multiple petitions to put all our grounds there. If I disagree with you on that, what sort of advice would people have to heed, would petitioners have to heed in the future? Maybe don't raise all of your grounds and know that some of them you might have to raise elsewhere? And what would be the consequence? Well, I think one issue, Your Honor, I think is that the board here instituted all the grounds. So, for instance, the board could have said, look, we're not going to hear of this many cases, and we're going to institute on Giordano Wallace, but we're not going to institute on Prisco. We're just too much. If they had done that, there would be no estoppel, right? It would be a ground that the board refused to institute on, and therefore, it would not have been, could not have been raised in the IPR process. We're kind of being penalized because the board did institute, and they said, okay, we are going to – What about – Yes, Your Honor. What about – that's all right. I understand your position. What about, you know, the PTO, the government brief points out that you could have sought consolidation of the IPRs so that the dates would run at the same time. What about that point, that this problem could have been avoided by asking the board to consolidate the IPRs such that the final decisions in all three came out at the same time? Your Honor, I've got two answers to that. Number one is, of course, if estoppel doesn't apply, consolidation doesn't solve that issue. But the fact is, we thought we had done that. We consolidated the three proceedings for the final event in those proceedings, which was the hearing. And, in fact, in the consolidation or in the hearing order, which, granted, was specifically the hearings, they did state we are going to be consolidating the proceedings. So we thought we had succeeded in bringing them all together for the final oral argument event, and it was a single oral argument. Did you ever ask that the IPRs be consolidated? I mean, the fact that they decided to hear them together doesn't mean there's a formal consolidation. Well, actually, Your Honor, on this technicality, I'm not exactly sure, but they were not heard on the same day. It was a consolidated hearing, right? Just like we're arguing now all three cases, we argued all three cases in one session. It was not just on the same day. But you want to save the rest of your time for rebuttal? Yes, Your Honor. Thank you very much. Okay. Okay. First, Mr. Desai. Good morning, Your Honor. May it please the Court. I'll start with the 1254 IPR, and I think it's important here to start with the petition and the Board's findings regarding the petition. Intuitive's arguments for Claims 11 and 24 were clear, and the Board assessed the petition at Appendix 150-151, and it was quite clear from the petition that the combination consisted of Shelton's stapler for use with Giordano's articulation mechanism. Intuitive defined Giordano's articulation mechanism as the Articulation Control 16 and the Articulation Pivot 14, and then they went on to say you would take that resulting device and attach it to the Wallace robot. And it was clear from Intuitive's brief, again, that the articulation mechanism was the Pivot 14 and the Control 16 together on the shaft. And the Board agreed that there was no argument in the petition regarding any relocation of the Articulation Control to move it into Wallace's tool-mounting portion, and the Board found this at Appendix 149. Now, on appeal, Intuitive is asking for... What's your response to your friend on the other side saying, well, actually, all the Board said is we were left unclear in the petition. They didn't say it wasn't in there. Well, we disagree with that. And if you look at Appendix 149, it says we agree with Pat and Oner that it is clear that the primary combination as set forth in the petition did not include any modification to Giordano's Articulation Control 16 to relocate its function into Wallace's tool-mounting portion. So the Board considered the petition, looked for the argument that Intuitive said they were making, and said it was not in the petition. And the Board's assessment of what was in or not in the petition is, in our view, only reviewable for an abuse of discretion. And on this issue, Ethicon, in its Pat and Oner response, pointed out the deficiencies of the combination. In reply, Intuitive tried to make a new argument that the Articulation Control would be relocated to the tool-mounting portion. The Board permitted Ethicon to file a list of improper reply arguments, and Ethicon listed this new argument in that listing of improper reply arguments. And in the final written decision, the Board, again, agreed with Ethicon that the argument was not in the petition and did not address the reply argument. That decision by the Board, not to address the improper reply argument, is only reviewable for an abuse of discretion, as we pointed out in our red brief. So, simply put, Your Honor, the argument... Mr. Desai, Judge Clenger, what's your response to Mr. Katz's pointing to page 3964 in his petition? Well, I have that portion of the appendix up in front of me, and if we look at those pages of the petition on 3963 and 3964, these are the pages of the petition that the Board assessed and said they do not include any modification to Giordano's Articulation Control. So the Board made a finding that they looked at the petition, they looked at these pages, and said, We don't see the argument you're making. We see a different argument. And the Board's analysis was thorough here because they went through the petition, and they said, Well, there were specific components that you were arguing would be moved into the robotic tool base. And they went through all of those specific components that Intuitive had said would be moved into the tool base. And none of those included the Articulation Control. So, where Intuitive in his petition wanted to argue that something was being moved into the tool base, they were specific. What about the statement, Mr. Desai, on page 3964? The petition said the posita would have been further motivated to add Giordano's Articulation Mechanism to the statement shelter, to the statement. So the statement there is a posita would have been motivated to add Giordano's Articulation Mechanism to the Shelton stapler. Those are both the handheld staplers, Shelton and Giordano. So what they did was they started with Shelton's stapler, which had no articulation. And then they added Giordano's articulation to that. And that was the articulation mechanism that has the pivot and the control on the shaft. So that sentence that Mr. Cass pointed you to was not about the combination with Wallace. It was first the starting point of Giordano plus Shelton. So that doesn't disclose, that sentence is not even about what you would do with the robotic system later on. It has nothing to do with Wallace. So I think the board was absolutely correct in saying this doesn't talk about moving the articulation control into Wallace's robotic system. One additional point I'll make about the argument for the 1254 is that Intuitive argues that the board erred in requiring the petition to identify the location of an unclaimed element. This argument misses the mark for two reasons. First, Ethicon explained to the board that a postida would have been deterred from making the combination because it would result in a device that had an articulation control located on the instrument shaft. The board agreed and found Intuitive's obviousness argument in the petition conclusory inadequate on this point. And that's at Appendix 151. And then second, Intuitive ignores the claim language that requires an articulation joint. The articulation joint has spine portions and the proximal spine portion is operably coupled to the tool mounting portion, which is in turn coupled to the drive assembly of the robotic system. The point being articulation control is part of the claim. And this is why the claims are clearly directed to an articulation joint controlled by the robotic system. And this is why the board found Intuitive's petition, which relied on the shaft-based articulation control, inadequate. So the argument was tied to claim language. And there was a reason why the petition failed to address how the claims specified the articulation joint is controlled. Unless your honors have any questions, I'll move on to the 1248 IPR. For this IPR, obviously the arguments by Mr. Katz were devoted mostly to the estoppel issue. Ms. Craven for the PTO was going to be addressing that issue, and we are aligned on that issue. So I was planning on going straight to the merits and letting Ms. Craven handle that issue. But we certainly agree that Intuitive is not a party. It was not a party. It was terminated based on estoppel, and therefore has no standing to appeal this issue. Why was it terminated before the final judgment? Wasn't it terminated by the final judgment? I believe it was terminated by the final judgment, but the act that resulted in it was. Isn't it bound by the final judgment? Well, I think the Patent Office argues that it's not bound by that final judgment. Well, what do you argue? You're the party. The Patent Office is not the party. So the final written decision concerns Ethicon's rights in the patent, not any rights of Intuitive. So in that sense, the judgment doesn't apply to Intuitive. Well, I mean, assuming Intuitive tried to file exactly the same IPR again, it would be dismissed on res judicata among other grounds, wouldn't it? Well, they would be barred by estoppel because of the previous IPR decisions. I know that, but wouldn't they also be? I mean, if you wanted to bring sanctions against them, they'd be barred by res judicata. It's possible. Your Honor, I would say that, first and foremost, they would be barred by estoppel, which is why they were terminated in the first place. The 1247 and the 1254 decisions were what caused the termination. The decision was made to terminate them. Whether or not they're bound by the final judgment matters materially to Intuitive because otherwise it doesn't have any standing to complain about the patentability decision before us. Do you conceive that Intuitive has standing to appeal the estoppel issue? That's a yes or no type question. Your Honor, I don't believe they have standing to appeal in the context of the 1248 decision. They're not a part of it. You don't believe they have the right to appeal even the merits of the estoppel decision? There's a jurisdictional statute that provides the right to an appeal in the IPRs, 35 U.S.C. 141 and 35 U.S.C. 319, and that limits the court's jurisdiction to appeals brought by a party. Intuitive ceased to be a party when the board terminated Intuitive from the IPR because of the estoppel provision. Because they're not a party, they do not have appeal rights per the statute. We would submit that they do not have the ability to appeal any of the decisions. Even to the question of whether or not the estoppel decision was correct? That is correct. Mr. Desai, this is Judge Stoll. You agree, of course, that we need to look at the estoppel issue as we're determining whether, in fact, Intuitive has the right to appeal and whether we would have jurisdiction over such an appeal, right? That's correct. Ultimately, whether they were properly terminated is a question of whether the estoppel applies. Right, and that's the question that's being raised by Intuitive, and you told me a minute ago we don't have any authority to hear that. I think the issue is they don't have the ability to appeal the final written decision of the board's decision on the prior art. Wait a second. You told me a minute ago they didn't have any right to appeal at all. Treat the final written decision by the board as having two parts. Part one is estoppel. Part two is the merits of the patentability issue. Do we have authority to hear part one, the estoppel question? I believe... Yes or no? I don't believe you do. Don't believe it. Yes or no, we do not. So we have no authority to hear any part of this appeal on the 1481, whichever one it is? That's correct, Your Honor. Intuitive was not permitted to file a notice of appeal. They were not a party to the case. What if counsel, and I know you're out of time, and we'll get to Ms. Craven in a second, but what if, for instance, that there weren't two parts, that the only part was estoppel, and that the board never got to the merits? We wouldn't be able to review that? If the board had terminated the proceeding and decided not to issue a final written decision? Yes. I believe the answer is intuitive, would not be a party, and would not have a right under the statute to appeal. Similar to the sense of a petitioner cannot appeal a decision done by an institution. They were a party, but the statute gives them no right to appeal that. Okay. Thank you. All right, let's hear from Ms. Craven. Good morning, Your Honors, and may it please the Court, why don't we just start where you were about whether this Court can review the estoppel decision. It is the Director's position that this Court has jurisdiction to review the estoppel decision because it's, in essence, determining its jurisdiction over the merits of the final written decision. So I thought, I don't, the Director's not arguing this Court cannot review the estoppel decision now that, because that is what the determination… Could you go through that once again, Ms. Craven, and explain exactly why we have authority over the estoppel decision? So, it's my understanding, this Court always has jurisdiction to review its own jurisdiction, and in order to decide whether it has jurisdiction under 319 over the merits of the final written decision with respect to patentability, it has to determine if Intuitive is a party that can appeal and has a right to appeal under the 319 statute. And in order to do that, the jurisdictional fact is whether the estoppel decision is correct. So, this Court, in order, in aid of its own jurisdiction, has to review the estoppel decision. Okay, so it's… So we say it's a party to the proceeding insofar as the estoppel decision was made? Is that what you're saying to me? Well, the final written decision, the final written decision was two parts. It was, as your Honor said, first it was deciding Ethicon's motion to terminate, which had the estoppel and then whether the Board was going to exercise its discretion to issue the final written decision. And after that, there was the final written decision with respect to patentability. The Board could have issued those as two separate documents. They're two separate decisions, but the first decision, the estoppel decision, in deciding whether to issue a final written decision, is that estoppel decision requires this Court to determine whether Intuitive actually was correctly terminated as a party in order to determine whether it has that appeal right under 319. Ms. Craven, this is Judge Stoll. So, let me give you a quick hypothetical. Let's just confirm a minute that the Board got it wrong and it's estoppel decision. You're saying that it would be appropriate for us to review that estoppel decision and if we concluded differently than the Board, then we would be able to review the merits as well. Is that correct? That's correct. So, the estoppel decision is the Board's decision terminating Intuitive as a party so that they would no longer be a party to the final written decision. But if this Court thought the Board's decision was incorrect, that means Intuitive shouldn't have been estopped, then they are still a party to the final written decision and they could appeal the merits because they would have a statutory right under 319 to appeal. Thank you. This is Judge O'Malley. Ms. Craven, let's talk then about the estoppel decision. Do you agree with Mr. Katz that the Board actually said it was consolidating the cases? That is not the way I read it and it's not the way the Board read its consolidation for the hearing. The point was it was on Petitioner's motion to consolidate the hearing for the convenience of the party and the Board and it also included another IPR that's not part of this appeal and the Board consolidated just for the purpose of the hearing. But there was no formal request for consolidation of the IPRs. The IPRs were never consolidated and there was no request to just even coordinate the schedules so that since the institution decision, the schedules have been off kilter so that the 248 IPR was running behind the other IPRs and there was no request to even coordinate those schedules so that they would all have a final written decision on the same day. The request was simply to coordinate the oral hearing. I have one more question. I guess the real issue is, is this a question of raising form over substance or is the point is that the statute requires this result because they didn't seek to formally consolidate? The statute requires it if they reasonably could have raised these grounds. The statute doesn't say anything specific for simultaneous versus serial file petitions. It's when the final written decisions issue. But Congress through the AIA gave intuitive and petitioners other ways to deal with concurrent IPRs. The director can consolidate them and the Board can coordinate schedules. And this is only the second time this issue has come before the court for concurrent IPRs. So virtually all other petitioners are coordinating either their petitions or their trials to result in final written decisions on the same day and not trigger a stop all. Okay, thank you. We'll hear from Mr. Katz. Thank you, Your Honor. Very quickly just want to address a lawless point made and then move right into a stop all. So my friend pointed you to Appendix 151 discussing the Board decision. There the Board actually said that Giordano's articulation mechanism uses a shaft-mounted articulation control. And that drove the Board decision. That actually is clearly wrong. Our petition pointed out that the articulation control can reside on the handle. And we're not relying just on 3964. To be very clear, 3964 shows it's on the handle. Appendix 3905 says for an earlier claim, you remove the handle and replace it with the tool-mounted portion. Turning to the stop all point, working backwards a little bit, if you actually look at Appendix 3065, the Board says we see no harm in consolidating all three proceedings. However, if patent owner has good cause for opposing consolidation of the three identified proceedings, patent owner should contact the Board. So while that was an issue for the hearing, the language was broader. And certainly we did not expect that we weren't synchronizing all the cases. By doing that. Turning to the estoppel issue, even if there's estoppel, and again, we don't believe there is. And I've heard nothing in either argument suggesting that we could have actually complied with the word limit. And so we think we fall outside the reasonably could have raised issue, that we could not have reasonably raised. But even assuming that, of course we were a party. And we were a petitioner, so we were definitely a party to the IPRs. And I would draw your attention to the one case from the Supreme Court that both the patent owner and patent office cites to, which is the Karsher v. May case. In that case at 484 U.S. at 81, the Supreme Court is very clear that they reviewed the entire proceedings to see whether the appellant, purported appellant, would be a party. They didn't just say we only look at the judgment. May I finish this one thought, Your Honor? Yes, you may. The language is that they look at each point in the proceeding below, and they determine that this purported appellant was not a party at any point. And so it's not a question of whether you're a party right at the last second. We clearly were a party, and we would say that the board can't remove jurisdiction of this court by just doing a termination and a final written decision. Okay. Mr. Cash, the statute says that you can't maintain a proceeding once you're stopped, if you're stopped. So wouldn't participation in the appeal here be maintaining the proceeding on the merits? We don't believe so because we believe that the... Why? Because the proceeding... Go ahead. The statute is saying the proceeding at issue there is the proceeding before the board, and an appeal is actually a different proceeding, now before this court, where we're challenging what the board did. And so we don't see the proceeding before the board ended with a final written decision, and then we appealed that, and we don't view this as the same proceeding. We are now appealing a proceeding where we were a party. Okay, thank you. Thank you, Your Honors.